**Jason Kedrick SIMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–00–01260–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 22, 2002.

---

Mike DeGuerin, Foreman, DeGuerin, Nugent & Gerger, Houston, for Appellant.

Rikke Burke Graber, Asst. Dist. Atty., Houston, for the State.

Panel consists of Justices NUCHIA, JENNINGS, and WILSON.*

## OPINION

DAVIE L. WILSON, Justice (Retired).

After the trial court denied his pretrial motion to suppress evidence, Jason Kedrick Sims, appellant, pleaded no contest to possession of marihuana in a useable quantity of less than two ounces. Pursuant to a plea bargain agreement, the trial court assessed punishment at 30 days in jail. In one point of error, appellant argues the

---

* Justice Davie L. Wilson, who retired on March 31, 2002, continues to sit by assignment for the disposition of this case, which was submitted on March 18, 2002.

trial court erred when it denied his motion to suppress evidence. We affirm.

## Background

Around midnight on June 23, 2000, Harris County Deputy Sheriff Ron Rooth responded to a domestic disturbance at the Polly Apartments. Three officers were at the apartment when he arrived, and the officers told Rooth that a black male, "younger in age" had left the scene before they arrived.

While walking to his patrol car, Deputy Rooth saw appellant walking in the apartment complex's courtyard, heading in the general direction where the disturbance occurred. Appellant, who matched the suspect's description, appeared to be intoxicated[1] and was carrying a 40–ounce can of Schlitz malt liquor.

Deputy Rooth testified appellant denied being involved in the disturbance and said he was on his way to his "baby's mother's house." When Rooth asked for appellant's identification, he said he had none, but stated his name was "Jason Simms" and provided his date of birth. Deputy Rooth asked appellant to come to the patrol car so he could determine if appellant was involved in the disturbance. He patted appellant down, and placed him in the back of the patrol car where the back doors were locked. Rooth ran a computer check on the name "Jason Simms," but was unable to obtain any information.

Leaving appellant in the locked patrol car, Deputy Rooth walked to the apartment appellant said he was visiting. The woman inside denied knowing appellant. Rooth returned and again asked appellant his name, but appellant told Rooth to call his girlfriend. Another officer, who had a cellular phone, called the woman, and she admitted knowing appellant, but said that his last name was spelled with one "m" and gave a different date of birth than appellant earlier reported. With the new spelling of the last name and the new date of birth, a computer check revealed that appellant had an outstanding arrest warrant from Mississippi.

An hour after the initial stop, Deputy Rooth arrested appellant and drove him to the police station. When he removed appellant from the back of the patrol car, Rooth discovered a bag of marihuana under the back seat. Rooth testified that he had searched the patrol car before he began his shift, there were no narcotics in it, and appellant was the first person in the back seat of the patrol car since the beginning of Rooth's shift.

## Motion to Suppress

In his only point of error, appellant argues the trial court erroneously denied his motion to suppress evidence obtained subsequent to an illegal detention.

 In reviewing a motion to suppress evidence, we give great deference to a trial court's determination of historical facts. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). Mixed questions of law and fact that turn on the credibility and demeanor of a witness are reviewed under the almost-total-deference standard, and mixed questions of law and fact that do not turn on the credibility and demeanor of a witness are reviewed de novo. *Id.* Also, we examine the evidence in the light most favorable to the trial court's ruling. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim.App.1999). When the trial court does not file findings of fact, we assume

---

1. Officer Rooth admitted his offense report did not mention appellant's alleged intoxi- cation.

that the trial court made implicit findings that support its ruling, so long as those implied findings are supported by the record. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App.2000).

## Investigative Detention

 Citing *Brown v. State*, 481 S.W.2d 106 (Tex.Crim.App.1972) and *Faulk v. State*, 574 S.W.2d 764 (Tex.Crim.App. 1978), appellant contends the "general description of 'young black male,' without any description to distinguish the alleged suspect from the general populace, does not rise to the level of reasonable suspicion to allow a lawful detention." In *Brown*, a Dallas police officer followed a car containing four men who "fit the general description" of persons who had committed an armed robbery the day before. *Brown*, 481 S.W.2d at 108. The description consisted only of a designation as to race and an approximation as to height and weight. *Id*. While following them, the back seat occupants turned to look at the officer, and the officer believed their body language indicated they were attempting to conceal a weapon. *Id*. The police officer called for back-up and continued to follow the car. The driver of the car stopped the car and walked back to ask the police officer why he was following him. *Id*. at 108–09. The driver produced his identification and then went back to his car and waited for the back-up to arrive. *Id*. When the back-up arrived, the four men and the car were searched. No weapons or contraband were found on the men, but some ammunition was found in the glove compartment, and a baggie of marihuana was found behind the back seat armrest. Several weapons and ammunition were found in the trunk. *Id*. at 109.

The Court of Criminal Appeals found the police officer lacked specific information linking the men to the armed robbery; therefore, he lacked probable cause to arrest or search them. *Id*. at 111. Additionally, the Court held that to constitute probable cause, it must assume (1) the men recognized the unmarked police car; (2) the gestures were in response to that awareness; and (3) the gestures were purposely made to avoid apprehension. The Court reversed and held the chain of inferences was too tenuous to establish even probable cause for an investigative stop. *Id*. at 112.

In *Faulk*, a Lubbock police officer heard on his radio that a "young black male wearing a multicolored shirt" had just robbed a convenience store and was headed south of the store on foot. *Faulk*, 574 S.W.2d at 765. Approximately two miles from the scene of the crime, the officer noticed a black male driving a car. He saw the car speed up slightly and then slow down as the driver leaned forward and to the right. *Id*. At no time were any traffic violations committed in the officer's presence. The officer stopped and searched the car. He discovered a hat and money pouch under the seat and a weapon under the dash. *Id*.

The Court of Criminal Appeals held that the officer's inarticulate hunch, suspicion, or good faith was not enough for an investigatory stop simply because Faulk was seen a short period of time after the robbery and close to the robbery scene. *Id*. at 767.

When Officer Rooth initially approached appellant, he conducted a specific inquiry. He wanted to know if appellant was involved in the disturbance. Appellant said he was not. Officer Rooth then asked appellant for identification. He had no identification on him, but told Rooth his name and date of birth. Rooth took appellant to his patrol car to run a computer check. He patted appellant down and

placed him in the backseat of the patrol car and locked the doors.

 We have previously held that, once a pat-down search takes place, a stop becomes an investigative detention and not a consensual encounter. *See Gamble v. State,* 8 S.W.3d 452, 453 (Tex.App.-Houston [1st Dist.] 1999, no pet.). An investigative detention is generally justified if specific, articulable facts, taken together with their rational inferences, lead the detaining officer to conclude that the detainee may be associated with a crime. *See Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *Woods v. State,* 956 S.W.2d 33, 38 (Tex.Crim.App. 1997); *Gamble,* 8 S.W.3d at 453. We review the totality of the circumstances. *Woods,* 956 S.W.2d at 38.

Here, the bases for the detention were that appellant (1) was a young, black, male, and (2) was walking in the courtyard of an apartment complex near where a domestic disturbance had taken place.

Deputy Rooth testified he stopped appellant to find out if he was involved in the disturbance, and the only reason for stopping him was that he fit the general description of a young, black male that had been observed leaving the scene. He had not seen appellant engage in any criminal activity, and he did not stop him because he was carrying a beer. Rooth said he was more concerned about the disturbance than appellant's possible inebriation; therefore, he did not do any field sobriety tests.

Rooth testified he did not know how many apartments were in the apartment complex, and the record does not indicate how far Rooth was from the disturbance when he came across appellant.

Although the State argues appellant's intentional self-misidentification is significant, it is the *timing* of the events that is significant. When Deputy Rooth initiated his investigative detention, he did not know appellant's name was spelled with one "m." Regardless, Texas Penal Code section 38.02 states that a person commits the offense of failure to identify if:

(a) ... he intentionally refuses to give his name, residence address, or date of birth to a peace officer who has lawfully arrested the person and requested the information ... [or]

(b) ... he intentionally gives a false or fictitious name, residence address, or date of birth to a peace officer who has:

(1) lawfully arrested the person;

(2) lawfully detained the person; or

(3) requested the information from a person that the peace officer has good cause to believe is a witness to a criminal offense.

TEX. PENAL CODE ANN. § 38.02 (Vernon 2002). Appellant was not under arrest or lawfully detained when he gave Deputy Rooth the incorrect spelling of his name, and Rooth gave no testimony indicating he had good cause to believe appellant was a witness to a crime. In fact, on cross-examination, Rooth was asked if the complainant was available at the scene to identify appellant. Rooth testified the complainant was still in the apartment complex, but he never attempted to get a better description of the suspect or have the complainant identify appellant.

 In order to justify an investigative detention, an officer must have specific, articulable facts, which, in light of his experience and personal knowledge, together with other inferences from those facts, would warrant the intrusion on the person stopped for further investigation. *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880. These specific and articulable facts must create a reasonable suspicion in the offi-

cer's mind that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime. *Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Crim.App.1983).

Deputy Rooth testified the only reason he stopped appellant was that he fit the description of the suspect—he was a black male in his early 20s—walking in the apartment complex. These are not sufficient articulable facts to connect appellant with the disturbance.

In this case, because the trial court denied the motion to suppress, the implied finding is either that Deputy Rooth properly detained appellant or that a lawful arrest attenuated the unlawful detention.

**Exclusion of Evidence**

Having found appellant was improperly detained, we must determine whether admission of the evidence was appropriate. Article 38.23 requires the exclusion of evidence "obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas." TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.2002). Evidence should be excluded once a causal connection between the illegality and the evidence is established. *Roquemore v. State*, 60 S.W.3d 862, 872 (Tex.Crim.App. 2001).

The State argues that the discovery of the arrest warrant sufficiently attenuated the illegal detention. The attenuation doctrine is applicable to article 38.23's prohibition against evidence "obtained" in violation of the law because evidence sufficiently attenuated from the violation of the law is not considered to be "obtained" therefrom. If the evidence is not "obtained" in violation of the law, then its admission into evidence is not in contra-vention of article 38.23. Thus, the attenuation doctrine is not an exception to article 38.23, but rather is a method of determining whether evidence was "obtained" in violation of the law. *See Johnson v. State*, 871 S.W.2d 744, 751 (Tex.Crim.App.1994).

Here, it is undisputed that appellant's arrest, subsequent to the discovery of the outstanding warrant, was legal. Once the outstanding warrant was discovered, Deputy Rooth took appellant to the police station. The marihuana was discovered in Deputy Rooth's patrol car after appellant got out of the car at the police station. The marihuana was not obtained in violation of the law. It was obtained subsequent to and pursuant to a lawful arrest. *See Brooks v. State*, 830 S.W.2d 817, 821 (Tex.App.-Houston [1st Dist.] 1992, no pet.).

We hold the trial court did not abuse its discretion when it overruled appellant's motion to suppress evidence.

We affirm the judgment of the trial court.