Charles Edward JONES, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–03–00651–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 8, 2005.

Nicole DeBorde, Houston, for Appellant.

Kevin P. Keating, Assistant District Attorney, Charles A. Rosenthal, Jr., District Attorney–Harris County, Houston, TX, for Appellee.

Panel consists of Justices TAFT, JENNINGS, and BLAND.

## OPINION ON FURTHER REHEARING

JANE BLAND, Justice.

Appellant, Charles Edward Jones, filed motions for rehearing and for en banc consideration. We granted the motion for rehearing to consider our decision in light of the standard of review established in the Texas Court of Criminal Appeals's opinions in *Sanchez v. State*, 165 S.W.3d 707 (Tex.Crim.App.2005) and *Rich v. State*, 160 S.W.3d 575 (Tex.Crim.App.2005). We issued a new opinion on rehearing on July 28, 2005. On August 25, 2005, we ordered that opinion withdrawn pursuant to Texas Rule of Appellate Procedure 50 in order to consider additional authority and to conform our decision with the decision in *Wappler v. State*, No. 01–01–00389–CR, —— S.W.3d ——, 2005 WL 3315039 (Tex. App.-Houston [1st Dist.] Dec. 8, 2005, no pet. h.), also issued by our court today. We thus withdraw our opinion dated July 28, 2005, and issue this opinion in its stead.

The disposition in the judgment remains unchanged.

A jury found Jones guilty of possession of between one and four grams of cocaine, found two prior felony enhancement paragraphs true, and assessed punishment at 35 years' confinement. On appeal, Jones contends the trial court erred in (1) denying him the opportunity to ask the jury venire a proper question about parole, requiring a new punishment hearing because such error is of constitutional magnitude; and (2) denying his motion to suppress evidence. We affirm.

## I. Background

Lieutenant Stephen Casko of the Houston Police Department stopped a car because the driver had not maintained a single lane of traffic. Jones was a passenger in the car, and Jones's brother was the driver. Casko identified the car's occupants and checked their names for outstanding warrants. Because he did not receive a report indicating any outstanding warrants, Casko ended the stop and allowed the driver to continue driving.

Casko's computer system had been having problems that night. About an hour after he released Jones and his brother, Casko received a delayed notification that Jones had an outstanding warrant for his arrest. Casko went to Jones's house, found Jones in the front yard, and placed him under arrest. Casko searched Jones. During the search, Casko found a crack pipe in Jones's left pocket and a pill bottle containing 24 rocks of crack cocaine in his right pocket.

## II. Questioning of the Venire about Parole

Jones first contends the trial court erred in refusing to allow his counsel to question the venire about parole. Specifi-

cally, defense counsel asked the venire, in a group setting, the following question:

> If I'm correct on the law, you may receive a jury instruction from the court that you are not to discuss nor consider the matter of parole in any kind of sentence you assess. I would like to ask, is there a juror here who would be unable to follow that instruction.

The State objected to the question, the trial court sustained the objection, and defense counsel noted its exception to the ruling. A trial court abuses its discretion if it denies defense counsel the right to ask prospective jurors a proper question because such a denial prevents the defendant from intelligently exercising his peremptory strikes. *Barajas v. State*, 93 S.W.3d 36, 38–39 (Tex.Crim.App.2002); *Smith v. State*, 703 S.W.2d 641, 643 (Tex.Crim.App. 1985). In its brief, the State does not dispute that preventing counsel's question about parole was error in that it did not permit counsel to thoroughly interview the venire. *See Barajas*, 93 S.W.3d at 38–39. The issue in dispute is whether this error was harmful, and which standard of review we are to employ in making such a determination.

*A. Constitutional or Non–Constitutional Error*

■■■ We deal with the fine point of harm analysis with respect to voir dire error in criminal cases. In *Gonzales v. State*, the Texas Court of Criminal Appeals recognized that an impermissible exclusion of a proper question during jury voir dire is subject to harmless error review. *Gonzales v. State*, 994 S.W.2d 170, 171 (Tex.

Crim.App.1999) (remanding cause for harm analysis based on trial court's impermissible exclusion of proper question about necessity defense during voir dire). If a trial court abuses its discretion in refusing to allow a defendant to ask a proper question during voir dire, then we conduct a harm analysis under Texas Rule of Appellate Procedure 44.2. *Id.* In so holding, the *Gonzales* court rejected the argument that voir dire error is structural constitutional error and categorically immune from harm analysis. *Id.* (citing *Cain v. State*, 947 S.W.2d 262 (Tex.Crim.App.1997)).[1]

Under Rule 44.2, however, two forms of harmless error review exist. First, if the appellate record reveals constitutional error, then a court of appeals must reverse unless it determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Tex.R.App. P. 44.2(a). Otherwise, the court of appeals must disregard the error unless it affects the defendant's substantial rights. Tex. R.App. P. 44.2(b). In *Gonzales*, the Court of Criminal Appeals remanded the cause for a harm analysis but did not state which form of Rule 44.2 analysis—constitutional or non-constitutional—reviewing courts should employ. 994 S.W.2d at 170. It is this question that the parties present in this case. In answering the question, we discuss the Texas Court of Criminal Appeals's jurisprudence before and since *Gonzales*.

Even before *Gonzales*, in *Jones v. State*, the court held that an improper removal of a juror for cause amounts to constitutional error "[o]nly in very limited circum-

---

1. Structural errors are those identified by the United States Supreme Court as "defect[s] affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Mendez v. State*, 138 S.W.3d 334, 340 (Tex.Crim.App.2004) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991)). Constitutional errors likely interfere with a defendant's constitutional right, but a harm analysis is nonetheless appropriate. *Id.* (citing *Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App.1997)).

stances." 982 S.W.2d 386, 390–92 (Tex. Crim.App.1998). The court identified the following examples as errors of constitutional magnitude: (1) "when a juror is erroneously excused because of general opposition to the death penalty" and (2) when a juror is excluded for an "impermissible" reason "such as race, sex, or ethnicity." *Id.* (citing *United States v. Prati,* 861 F.2d 82, 87 (5th Cir.1988)).[2]

Thus, in *Jones,* as long as the jury that actually serves is impartial, the defendant's constitutional jury right has not been infringed. *Id.* This holding protects a defendant's core rights, while allowing flexibility and room for human error on the periphery of this right. The examples provided in *Jones* demonstrate the type of error that impedes jury impartiality and thereby violates a defendant's constitutional right to an impartial jury. 982 S.W.2d at 391.

More recently, in *Sanchez v. State,* 165 S.W.3d 707 (Tex.Crim.App.2005), the Texas Court of Criminal Appeals determined that a trial court's error in allowing the State to improperly commit jurors to a set of facts is also non-constitutional error, subject to a Rule 44.2(b) analysis. The court observed that:

> reviewing courts should assess the potential harm of the State's improper commitment questioning by focusing upon whether a biased juror—one who had explicitly or implicitly promised to prejudge some aspect of the case because of the State's improper questioning—actually sat on the jury. The ultimate harm question is: was the defendant tried by an impartial jury, or, conversely, was the jury or any

specific juror 'poisoned' by the State's improper commitment questions on a legal issue or fact that was important to the determination of the verdict or sentence?

*Id.* at 713. Thus, the court applied Rule 44.2(b) to the issue of whether a biased juror actually sat on the jury. *See id.* More to the point here, in a footnote, the court seemed to recognize that a Rule 44.2(b) analysis should apply "when voir dire is conducted in a group setting and [the] defendant is prohibited from asking a proper question of the panel." *Id.* at 713 n. 16 (citing *Rich v. State,* 160 S.W.3d 575, 577 (Tex.Crim.App.2005)).

Our reading of these cases led us to conclude, in our initial opinion on rehearing, that the appropriate harm analysis to employ in this case is Rule 44.2(b). Yet, as our sister panel's opinion in *Wappler v. State,* No. 01–01–00389–CR, —— S.W.3d —— (Tex.App.-Houston [1st Dist.] Dec. 8, 2005, no pet. h.), released today, discusses, such a conclusion on our part may be premature. First, although *Sanchez* applies a Rule 44.2(b) analysis, that case dealt with improper commitment questions presented to the panel, not with the *exclusion* of a proper voir dire question. *See Sanchez,* 165 S.W.3d at 709.

Second, the Texas Court of Criminal Appeals has found the prohibition of proper questions to an individual juror, in the context of a motion for mistrial made after a juror had failed to reveal a significant relationship with the victim, to be error of a constitutional dimension. *See Franklin v. State,* 138 S.W.3d 351, 354 (Tex.Crim. App.2004).

---

**2.** *Prati* relied upon *Ross v. Oklahoma,* in which the Supreme Court held that a trial court's error in not granting a challenge for cause, that forced the defendant to use a peremptory challenge to correct the court's mistake, is not constitutional error. *United States v. Prati,* 861 F.2d 82, 87 (5th Cir.1988) (citing *Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988)).

Finally, although *Rich* involved the very issue presented here—the exclusion of a proper voir dire question—in that case, the Texas Court of Criminal Appeals applied a Rule 44.2(b) analysis in part because the defendant did not contend that the error was of constitutional magnitude. *See Rich,* 160 S.W.3d at 577. Nonetheless, in its opinion, the court provided specific guidance for evaluating the harm stemming from the exclusion of a proper voir dire question in a group setting:

> In the case of the erroneous admission of evidence, we have said that the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *We believe these same general factors are relevant considerations in determining the harm from being denied a proper question to the venire.*

*Id.* at 577–78 (footnote omitted) (emphasis added).

All of this is to say that recent law is unsettled as to whether to apply Rule 44.2(a) or 44.2(b) in the present circumstances.[3] We therefore first determine whether the heightened 44.2(a) standard requires a remand of this cause, assuming it applies. Specifically, using the guidelines set forth in *Rich,* we decide whether, beyond a reasonable doubt, the error did not contribute to the conviction or punishment in this case. For the reasons we

discuss, we conclude that it did not. This case therefore does not hinge on which branch of the Rule 44.2 harm analysis should apply, because we find the error to be harmless under the more stringent constitutional standard.

### B. Harmless Error Analysis

 In *Rich,* the Court of Criminal Appeals set forth guidelines for evaluating the harm resulting from the failure to allow a proper voir dire question: whether, upon review of the entire record, anything evidences harm, including (1) any testimony or physical evidence admitted for the jury's consideration; (2) the nature of the evidence supporting the verdict; and (3) the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. 160 S.W.3d at 577–78. Using the heightened Rule 44.2(a) standard of review, we consider these factors.

*1. Evidence admitted for the jury's consideration.*

The jury did not hear evidence regarding the availability of parole during the guilt/innocence phase of the trial nor during the punishment phase. Including the evidence presented during both phases of trial, the jury considered the testimony of four witnesses, physical evidence of the confiscated drugs and drug paraphernalia, the warrant for Jones's arrest, and two penitentiary packets. Vernon Jones, Jones's younger brother, testified about the traffic stop but was not present at, and thus did not comment about, Jones's arrest for drug possession. Lieutenant Casko testified regarding the events leading up to

---

**3.** In *Rios v. State,* we held that Rule 44.2(a) should apply to errors of this type after *Gonzales,* but we decided *Rios* before the Court of Criminal Appeals's decisions in *Sanchez* and

*Rich. See Rios v. State,* 4 S.W.3d 400, 403 (Tex.App.-Houston [1st Dist.] 1999), *pet. dism'd, improvidently granted,* 122 S.W.3d 194 (Tex.Crim.App.2003).

Jones's arrest, the circumstances of the arrest, the discovery of the crack cocaine, and the process followed to ensure the integrity of the physical evidence. Connie Dieringer, the chemist at the Houston Police Department crime lab who analyzed the evidence Lieutenant Casko seized from Jones, testified about the process she used to determine that the substance was crack cocaine. All of this evidence tends to show that Jones possessed approximately three grams of crack cocaine at the time of his arrest.

Jones contested the indictment's two enhancement paragraphs. During the punishment phase of the trial, the State introduced two penitentiary packets to the jury through Harris County Sherriff's Department Deputy Joe Noguera's testimony. He identified Jones as the person described in the packets.

The evidence admitted for the jury's consideration did not involve parole. Thus, we conclude beyond a reasonable doubt that nothing in the evidence admitted for the jury's consideration favors a finding that the error contributed to Jones's conviction or punishment.

*2. The nature of the evidence supporting the jury's verdict.*

Jones does not contest the legal or factual sufficiency of the evidence supporting his conviction and punishment. The testimony of Deputy Noguera combined with the penitentiary packets that describe the time Jones spent in jail provide sufficient grounds for the jury to have concluded that the two enhancement paragraphs were true. The trial court's instructions directed the jury to consider a punishment between 25 and 99 years. The jury assessed 35 years as punishment, toward the minimum of the statutory range. The jury did not hear evidence about parole in general, nor any evidence about how parole might affect Jones's conviction or punish-

ment. We conclude beyond a reasonable doubt that nothing in the nature of the evidence favors a finding that the error contributed to Jones's conviction or punishment.

*3. The character of the error when considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error.*

The trial court's charge contained the following jury instruction regarding parole:

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

*See* TEX.CODE CRIM. PROC. ANN. art. 37.07 § 4(a) (Vernon Supp.2004–2005).

No party discussed parole after voir dire. Because a jury is presumed to follow the trial court's instructions, it is presumed that the jury did not consider parole. *See Colburn v. State,* 966 S.W.2d 511, 520 (Tex.Crim.App.1998). Yet, the very question Jones wanted to inquire about was whether the venire could follow the court's instruction about parole. However, when viewed in the context of the evidence presented and the parties' theories of the case, both during voir dire and throughout the presentation of the evidence, parole was never an issue in the

case. Jones had an opportunity to question the venire members regarding the issues actually litigated and did not object to the venire's responses to those issues. At voir dire, the court entertained and granted nine challenges for cause from the defendant; Jones exercised all ten of his peremptory challenges. Nothing in the record suggests that the jury empaneled was less than impartial.

■ The State contends that the trial court's instruction ameliorated any harm that arose from the improper exclusion of the defendant's question about parole. In response, Jones asks this court to follow *Loredo v. State*, in which the Corpus Christi Court of Appeals held that the trial court's error in precluding the defendant from questioning the venire about its ability to follow the parole law was reversible error. 59 S.W.3d 289, 291–93 (Tex.App.-Corpus Christi 2001, no pet.). In *Loredo*, the trial court instructed the jury on the pertinent parole law, using the same charge as the trial court used in this case. *Id.* at 292 (citing Tex.Code Crim. Proc. Ann. art. 37.07 § 4 (Vernon Supp.2004–2005)). The *Loredo* court held that the right to ask questions of panel members is included in the right to counsel and is of constitutional magnitude. *See id.* at 292–93 (declining to decide whether failure to allow questions concerning parole is structural error). We disagree with the *Loredo* court's view that erroneous exclusion of a voir dire inquiry about parole is tanta-

mount to a deprivation of the constitutional right to an impartial jury, in a case in which the parties present no evidence about parole and the jurors are not asked to make any factual findings with regard to parole.[4]

■ Rather, we presume the jury follows the trial court's instructions in the manner presented. *Colburn*, 966 S.W.2d at 520 (presuming jury followed trial court's supplemental jury instruction not to consider parole in reaching verdict after jury sent note to trial court asking about possibility of parole for life sentence in capital murder trial). The presumption is rebuttable, but Jones does not rebut the presumption by pointing to any evidence that the jury failed to follow the trial court's instructions regarding parole. *See id.* For example, he did not file a motion for new trial alleging juror misconduct, nor obtain a hearing to adduce facts not in the record. *See id.*

Even if the presumption alone does not negate the potential harm from error of a constitutional magnitude in the context of voir dire, here, the trial court instructed the jury about parole only to remind it not to consider parole in reaching its decision about the evidence presented. In this sense, counsel's question about parole is a more specific commitment that the jury will consider only the evidence presented. The instruction did not involve the jurors' application of the law to the facts of the

4. Moreover, we distinguish this court's opinion in *Stringfellow v. State*, upon which the *Loredo* court relied. *See Loredo v. State*, 59 S.W.3d 289, 292 (Tex.App.-Corpus Christi 2001, no pet.) (relying on *Stringfellow v. State*, 859 S.W.2d 451, 453 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd)). In *Stringfellow*, we held that the trial court's error in precluding the defendant from questioning the venire members about their ability to follow the court's instructions on parole was reversible. *Stringfellow*, 859 S.W.2d at 453–54 ("The fail-

ure of the trial court to permit a proper question on an issue prevents the intelligent exercise of one's peremptory challenges and is an abuse of discretion, not subject to a harm analysis under Tex.R.App. P. 81(b)(2)."). We decided *Stringfellow* before the Court of Criminal Appeals issued its opinion in *Gonzales*, which held that a trial court's impermissible exclusion of a proper question during voir dire is subject to a harmless error analysis. *See Gonzales v. State*, 994 S.W.2d 170, 171 (Tex.Crim.App.1999).

case as presented to the jury. As such, it presents less potential for a "partial" jury than one in which the venire has been improperly committed "to prejudge some aspect of the case" based upon certain facts that will be introduced before the jury. *See Sanchez,* 165 S.W.3d at 712–13.

We hold that, beyond a reasonable doubt, the trial court's error in refusing to allow the proper question about parole did not contribute to Jones's conviction or punishment because parole in this case was not an issue that was actually litigated—the jury heard no evidence about parole, nor was it required to make any finding about it, nor did any party even mention parole. We therefore conclude that the trial court's error in prohibiting defense counsel from asking the venire his proposed question regarding parole was harmless, given the facts of this case.[5]

### III. The Motion to Suppress

Jones further contends that the trial court erred in overruling his motion to suppress the cocaine. He argues that the discovery of Jones's identity resulted from Casko's illegal detention during the initial traffic stop.

Courts do not consider the identity of a defendant to be a fruit of the arrest subject to suppression. *Pichon v. State,* 683 S.W.2d 422, 426 (Tex.Crim.App.1984) (applying *United States v. Crews,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980)); *Blondett v. State,* 921 S.W.2d 469, 473 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd). The police did not obtain any evidence from the traffic stop other than Jones's identity; thus, there were no fruits of the detention in this case. *See Blondett,* 921 S.W.2d at 473.

Moreover, upon identifying Jones and later detaining him in his front yard, Casko arrested Jones on a valid outstanding parole violation warrant. If an officer discovers a valid warrant for an individual's arrest and the officer arrests the individual under the authority of that warrant, any evidence found during a subsequent search incident to the arrest is admissible even if any illegality occurs in the initial detention. *Johnson v. State,* 496 S.W.2d 72, 74 (Tex.Crim.App.1973); *Sims v. State,* 84 S.W.3d 805, 810 (Tex.App.-Houston [1st Dist.] 2002, no pet.). The police obtained the cocaine subsequent to and pursuant to a lawful arrest. *See Sims,* 84 S.W.3d at 810. Accordingly, the trial court did not err in overruling the motion to suppress the cocaine.

### IV. Conclusion

We hold that (1) regardless of whether the trial court's voir dire error is subject to constitutional or non-constitutional harm analysis, the error in these circumstances was harmless; and (2) the trial court did not err in denying Jones's motion to suppress evidence, as the police found the cocaine at issue during a lawful search incident to an arrest. We therefore affirm the judgment of the trial court. As we have withdrawn our opinion and issued a new opinion on rehearing, we deny the motion for en banc consideration as moot.[6]

---

5. *See Nathan v. State,* 788 S.W.2d 942, 944 (Tex.App.-Fort Worth 1990, no pet.) (holding that trial court's instruction cured any error from venire member's improper comment about parole, absent showing that jury acted upon it); *McGee v. State,* 35 S.W.3d 294, 300 (Tex.App.-Texarkana 2001, pet. ref'd) (applying a Rule 44.2(a) standard, concluding that denial of voir dire about the voluntariness of

the defendant's statement was not harmful because "there was no evidence offered that the voluntariness of the statement would have been a factor or was a factor in the trial," but finding harm under Rule 44.2(a) where counsel was not allowed to voir dire the venire about prior convictions).

6. *See Retzlaff v. Tex. Dep't of Criminal Justice,* 135 S.W.3d 731, 734 n. 1 (Tex.App.-Houston

[1st Dist.] 2003, no pet.); *Hartrick v. Great
Am. Lloyds Ins. Co.,* 62 S.W.3d 270, 272 (Tex.

App.-Houston [1st Dist.] 2001, no pet.).