COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



CARLOS JARA,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-06-00243-CR



Appeal from the


168th District Court


of El Paso County, Texas


(TC# 20050D05745)



O P I N I O N


 This is an appeal from a conviction for the offense of possession of cocaine in an amount of
one gram or more, but less than four grams. Appellant pleaded guilty to the court, which assessed
punishment at seven years' community supervision and a fine of $2,500. We affirm.

I. SUMMARY OF THE EVIDENCE


 At the hearing on Appellant's motion to suppress the evidence, Officer Carlos Vasquez
testified that he was a police officer with the City of El Paso. On July 27, 2005, at 6 p.m., he was
working for the City of El Paso Housing Authority with his partner, Efrain Silva. Vasquez was
wearing his police uniform, although he was driving a Housing Authority vehicle.

 The officers observed a female motorist traveling east on Cyprus Street, not wearing a seat
belt. When the officers initiated a traffic stop, the driver pulled into one of the parking lots of the
Salazar Housing Complex. The officers checked for outstanding warrants for the driver. When they
learned that she had one or two traffic warrants for her arrest, they placed her in the patrol vehicle. 
 At that point, Appellant exited one of the Housing Authority apartments. He was "somewhat
irate, upset." Appellant asked what was happening. The officers told him to calm down and tried
to ascertain his name and whether he lived in the housing complex. Appellant provided his name
and his date of birth, but he was still upset and stated that the woman in the patrol car was his wife. 
Officer Vasquez explained to the court how it was necessary to control and contain an arrest scene
for the safety of the officers, the arrestee, and anyone who comes on to the scene. The officers ran
the information to determine whether Appellant had any outstanding warrants, and the warrant
search came back positive. Officer Vasquez testified that the procedure required that positive
identification be obtained. Officer Silva proceeded to try to obtain positive identification, but
Appellant could not produce any such identification. Appellant stated that he had to go inside the
apartment to get his identification. Appellant and Officer Silva went to the apartment. When they
came back, the identification was confirmed, and a pat-down search was performed. While the
search was occurring, Officer Vasquez noticed that Appellant's fist was clinched. The officer feared
that Appellant had something in his fist, so he ordered Appellant to open his hand. When Appellant
did not comply, Officer Vasquez grabbed his wrist and again instructed him to open his hand. When
Appellant did so, some bindles of a white powdery substance fell out of his hand.

 At this point, Appellant's wife asked him what the substance was, and he told her that it was
cocaine. Appellant was placed under arrest and was transported to the police station by another
police officer who had arrived on the scene.

 On cross-examination, Officer Vasquez acknowledged that his written police report indicated
that the existence of the outstanding warrants for Appellant was not known until after he and Officer
Silva returned from the apartment with the identification, and Officer Vasquez recanted his prior
testimony to the contrary. Officer Vasquez also testified that he never told Appellant that he was
free to leave, or that he was not obligated to get his identification, or that he did not have to allow
any officer into the apartment.

 Officer Silva also testified that, on July 27, 2005, at about 6 p.m., he was working with his
partner, Officer Vasquez, when they performed a traffic stop on a female driver. They learned of an
outstanding warrant for her arrest, and they arrested her. He explained that he then heard something. 
When he turned, he saw and heard Appellant yelling and screaming at his partner. Appellant wanted
to know what they were doing with his wife. His partner asked Appellant for identification. 
Appellant gave his name and birth date, but he lacked positive identification. Officer Silva called
on his cellular telephone and checked for warrants. He was told that Appellant had an outstanding
traffic warrant.

 The officer testified that, pursuant to policy, they then call the municipal court to confirm the
warrant. This confirmation process involves obtaining a positive identification of the individual, so
they then needed to verify the identity Appellant had given them. Appellant stated that his
identification was inside his apartment. He was told that, if he went to the apartment, one of the
officers needed to go with him. Appellant agreed. Officer Silva accompanied Appellant to the
apartment. Once there, Appellant went through some drawers. He seemed "antsy." After he found
his identification, Appellant stated that he wanted to go to the bathroom. Officer Silva agreed, but
stated that he would have to accompany him. Appellant stated that he no longer needed to go to the
bathroom, and they walked outside.

 The identification confirmed the warrant. Officer Silva gestured to his partner, and the two
officers had Appellant place his hands on the top of the patrol car. Officer Silva started to pat
Appellant down when he heard his partner ask, "What do you have in that hand? Open it up. Open
it up." Officer Vasquez grabbed Appellant's hand and a small struggle ensued. Appellant dropped
some bindles. The bindles later tested positive for cocaine. Then there was a conversation between
Appellant and his wife. She asked him whether the bindles belonged to him and whether he was
doing cocaine. Appellant responded that it was his cocaine, and he was doing cocaine. Two other
officers, who had arrived at the scene, transported Appellant and his wife separately.

 On cross-examination, Officer Silva reaffirmed that he and Officer Vasquez knew of the
outstanding warrant prior to Appellant's going to his apartment to get his identification,
notwithstanding the fact that there was no such indication in the written police report. The officer
testified that a warrant is not confirmed, until it is ascertained that the individual is who he says he
is. If that cannot be established at the time, the individual is taken to the police station to be
fingerprinted, in order to establish positive identity.

 Officer Silva testified that Appellant was not free to leave, although Appellant was never so
informed. The officer testified that he could not remember whether a pat-down search had been
conducted on Appellant when he first approached the vehicle.

 The court ruled that it was established that a warrant existed and that Appellant had
abandoned the cocaine. The motion to suppress the evidence was overruled.

II. DISCUSSION


 Appellant's sole issue is whether Appellant was illegally detained in order to ascertain his
identity and then subsequently illegally arrested. Specifically, Appellant asserts that the officers
lacked reasonable suspicion to detain him to ascertain his identity. Accordingly, Appellant contends
his arrest was illegal, and the cocaine obtained incident to that arrest should have been suppressed. 
 We review a trial court's ruling on a motion to suppress evidence under an abuse of
discretion standard. See Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). At a
suppression hearing, the trial court is the sole fact finder, and it may choose to believe or disbelieve
any or all of the witnesses' testimony. Alvarado v. State, 853 S.W.2d 17, 23 (Tex. Crim. App.
1993). We give almost total deference to the trial court's determination of historical facts when it
is supported by the record, particularly if the findings turn on witness credibility and demeanor. 
State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The same
deference is accorded to determinations of mixed questions of law and fact, if their resolution
depends upon witness credibility and demeanor. Ross, 32 S.W.3d at 856. Mixed questions of law
and fact that do not turn on an evaluation of credibility and demeanor are considered under a de novo
standard. Id. We will sustain the trial court's ruling if it is reasonably supported by the record and
is correct on any theory of law applicable to the case. (1) Villarreal, 935 S.W.2d at 138.

 The Court of Criminal Appeals has recognized three types of interactions between law
enforcement officers and citizens: (1) encounters; (2) investigative detentions; and (3) arrests. State
v. Perez, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002). In an encounter, a police officer may
approach an individual in a public place, ask him whether he is willing to answer questions, and pose
questions to the person, if he is willing to listen. Id. Such interactions are consensual and do not
trigger the Fourth Amendment, so long as a reasonable person would feel free to disregard the police
and go about his business. Hunter v. State, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997). However,
when the questioning becomes an investigative detention, the detention must be supported by a
reasonable suspicion. Citizen v. State, 39 S.W.3d 367, 370 (Tex. App.--Houston [1st Dist.] 2001,
no pet.).

 An investigative detention requires an officer to have a reasonable suspicion to believe that
an individual is involved in criminal activity. Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim.
App. 2002). The purpose of an investigate detention is to establish a person's identity or to maintain
the status quo, while an officer obtains more information. Comer v. State, 754 S.W.2d 656, 657
(Tex. Crim. App. 1986). The "reasonableness" of a temporary detention must be examined in terms
of the totality of the circumstances and will be justified when the detaining officer has specific
articulable facts, which, taken together with rational inferences from those facts, lead him to
conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. 
Id. The controlling question in determining whether there was a detention is whether the actions of
the officer would have made a reasonable person feel that he was not free to decline the officer's
requests or otherwise terminate the encounter. State v. Velasquez, 994 S.W.2d 676, 679 (Tex. Crim.
App. 1999).

 A seizure or detention does not occur, simply because a police officer approaches an
individual and asks him a few questions. Florida v. Bostick, 501 U.S. 429, 434, 111 S. Ct. 2382,
2386 (1991). So long as a reasonable person would feel free to disregard the officer and go about
his business, the encounter is consensual and will not trigger Fourth Amendment protection. Id. 
Even when officers have no basis for suspecting a particular individual, they may ask him general
questions, ask to examine his identification, and request consent to search his belongings, so long
as the police do not convey a message that compliance with their requests is required. See id. at
434-35, 111 S. Ct. at 2386. The issue is whether the police conduct would have communicated to
a reasonable person that he was not free to decline the officer's requests or otherwise terminate the
encounter. Velasquez, 994 S.W.2d at 679.

 Appellant maintains that the investigative detention began when he was asked to provide his
name and date of birth. Appellant also asserts that he was frisked at that time, although the court
could clearly have determined that a frisk-type search did not occur. As stated, merely asking for
identification does not go beyond a mere encounter. See Pennywell v. State, 127 S.W.3d 149, 152
(Tex. App.--Houston [1st Dist.] 2003, no pet.). We note that there is nothing in the record to
indicate that Appellant was detained while Officer Silva checked for outstanding warrants. 
Furthermore, there is nothing in the record to indicate that the officers' conduct would have
communicated to a reasonable person that he was not free to decline their requests for information
or that Appellant's responses were not voluntary.

 After the possible existence of an outstanding warrant surfaced, we find that the officers were
entitled to temporarily detain Appellant to further establish his identity. See generally Comer, 754
S.W.2d at 657. Appellant cites Kothe v. State, 152 S.W.3d 54 (Tex. Crim. App. 2004), for the
proposition that the officers used the warrant check impermissibly to extend the detention in
violation of the premise that, once the original purpose for the stop is exhausted, police may not
unnecessarily detain a driver, solely in hopes of finding evidence of some other crime. Id. at 64. In
the present case, Appellant was not restrained while the warrant check was run. He was only
detained, once there was an initial indication that an outstanding warrant existed. Consequently,
once the existence of the outstanding warrants was confirmed, probable cause for the arrest existed,
and the officers could search Appellant incident to the arrest. See McGee v. State, 105 S.W.3d 609,
614 (Tex. Crim. App. 2003).

 We also note that, even in a situation involving an illegal detention, where a valid warrant
for the appellant's arrest is discovered, and the appellant is arrested under the authority of that
warrant, evidence found during a subsequent search pursuant to the arrest is admissible into evidence
against the appellant. Johnson v. State, 496 S.W.2d 72, 74 (Tex. Crim. App. 1973); Sims v. State,
84 S.W.3d 805, 810 (Tex. App.--Houston [1st Dist.] 2002, no pet.); Brooks v. State, 830 S.W.2d
817, 821 (Tex. App.--Houston [1st Dist.] 1992, no pet.); Reed v. State, 809 S.W.2d 940, 945 (Tex.
App.--Dallas 1991, no pet.). Therefore, even if Appellant's detention were illegal, the evidence,
having been obtained pursuant to an arrest under a valid outstanding warrant, was admissible against
him.

 Appellant's sole issue is overruled.

III. CONCLUSION


 We affirm the judgment of the trial court.


 KENNETH R. CARR, Justice


January 10, 2008


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)

1. In view of our conclusions set forth below, we find it unnecessary to express any opinion on the trial court's
alternative conclusion that Appellant had abandoned the cocaine.