ACCEPTED
01-13-01004-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
2/18/2015 4:07:14 PM
CHRISTOPHER PRIN
CLERK

## No. 01-13-01004-CR

In the
Court of Appeals
For the
First District of Texas
At Houston

————————◆————————

## No. 1363644

In the 182nd District Court
Of Harris County, Texas

————————◆————————

## BRIAN VICTORIAN
*Appellant*

V.

## THE STATE OF TEXAS
*Appellee*

————————◆————————

STATE'S APPELLATE BRIEF

————————◆————————

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

2/18/2015 4:07:14 PM

CHRISTOPHER A. PRINE
Clerk

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**KATIE DAVIS**
Assistant District Attorney
Harris County, Texas
State Bar Number: 24070242
davis_katie@dao.hctx.net

1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone: (713) 755-5826
Fax Number: (713) 755-5809

ORAL ARGUMENT REQUESTED ONLY IF REQUESTED BY APPELLANT

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 39, the State requests oral argument only if oral argument is requested by the appellant.

## IDENTIFICATION OF THE PARTIES

*Counsel for the State:*

**Devon Anderson**—District Attorney of Harris County

**Katie Davis**—Assistant District Attorney on appeal

**Angela Smith**—Assistant District Attorneys at trial

*Appellant or Criminal Defendant:*

**Brian Victorian**

*Counsel for Appellant:*

**Kurt B. Wentz**—Counsel on appeal

**Yvonne Burton**—Counsel at trial

*Trial Judge:*

**Honorable Jeannine Barr**—Judge of 182nd District Court

**Honorable Don Burgess**—Visiting Judge at trial

i

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT ................................................i

IDENTIFICATION OF THE PARTIES ...................................................i

TABLE OF CONTENTS ................................................................ ii

INDEX OF AUTHORITIES........................................................... iii

STATEMENT OF THE CASE.........................................................1

STATEMENT OF FACTS ............................................................1

SUMMARY OF THE ARGUMENT ..................................................6

REPLY TO APPELLANT'S FIRST POINT OF ERROR........................................7

I. Standard of Review and Applicable Law......................................7

II. The evidence is legally sufficient to support the appellant's conviction for aggravated sexual assault of a child. ............................................9

REPLY TO APPELLANT'S SECOND AND THIRD POINTS OF ERROR .......17

I. Standard of Review ...........................................................18

II. The trial court did not abuse its discretion in admitting the appellant's extraneous sexual abuse of Jane into evidence.............................................19

A. *Jane's testimony that the appellant touched and fondled her on other occasions was more probative than unfairly prejudicial.* ..............................21

B. *The extraneous evidence that the appellant repeatedly touched Jane, as presented through the testimony of Isaac and the medical records, Isaac was more probative than unfairly prejudicial.* .....................................26

III. The appellant was not harmed by the trial court's admission of the extraneous conduct. .................................................................31

CONCLUSION ..................................................................33

CERTIFICATE OF SERVICE AND COMPLIANCE ...........................................34

# INDEX OF AUTHORITIES

**CASES**

*Adames v. State*,
353 S.W.3d 854 (Tex. Crim. App. 2011)............................................................7

*Albrecht v. State*,
486 S.W.2d 97 (Tex. Crim. App. 1972)...........................................................19

*Apolinar v. State*,
155 S.W.3d 184 (Tex. Crim. App. 2005)..........................................................18

*Austin v. State*,
222 S.W.3d 801 (Tex. App.—
Houston [14th Dist.] 2007, pet. ref'd)...............................................................28

*Beam v. State*,
447 S.W.3d 401 (Tex. App.—
Houston [14th Dist.] 2014, no pet.)........................................................... 23, 29

*Blackwell v. State*,
193 S.W.3d 1 (Tex. App.—
Houston [1st Dist.] 2006, pet. ref'd) ................................................................25

*Broxton v. State*,
909 S.W.2d 912 (Tex. Crim. App. 1995).........................................................30

*Burke v. State*,
371 S.W.3d 252 (Tex. App.—
Houston [1st Dist.] 2011, pet. ref'd) ................................................... 22, 23, 28

*Cardenas v. State*,
30 S.W.3d 384 (Tex. Crim. App. 2000)..............................................................9

*Chambers v. State*,
805 S.W.2d 459 (Tex. Crim. App. 1991)..........................................................15

*Clayton v. State*,
235 S.W.3d 772 (Tex. Crim. App. 2007)................................................ 8, 13, 17

*Garcia v. State*,
563 S.W.2d 925 (Tex. Crim. App. 1978)..........................................................14

*Geesa v. State*,
820 S.W.2d 154 (Tex. Crim. App.1991)..............................................................8

*Gigliobianco v. State*,
210 S.W.3d 637 (Tex. Crim. App. 2006)................................................................20

*Gonzalez v. State*,
337 S.W.3d 473 (Tex. App.—
Houston [1st Dist.] 2011, pet. ref'd) .....................................................................9

*Green v. State*,
934 S.W.2d 92 (Tex. Crim. App. 1996)................................................................18

*Greene v. State*,
287 S.W.3d 277 (Tex. App.—
Eastland 2009, pet. ref'd)....................................................................................22

*Guevara v. State*,
152 S.W.3d 45 (Tex. Crim. App. 2004)................................................................23

*Guzman v. State*,
955 S.W.2d 85 (Tex. Crim. App. 1997)................................................................18

*Hinds v. State*,
970 S.W.2d 33 (Tex. App.—
Dallas 1998, no pet.) ...........................................................................................20

*Hinojosa v. State*,
995 S.W.2d 955 (Tex. App.—
Houston [14th Dist.] 1999, no pet.).....................................................................24

*Hooper v. State*,
214 S.W.3d 9 (Tex. Crim. App. 2007)....................................................................8

*In re R.R.*,
373 S.W.3d 730 (Tex. App.—
Houston [14th Dist.] 2012, pet. filed) ............................................................ 13, 15

*Jackson v. Virginia*,
443 U.S. 307 (1979) .........................................................................................7, 17

*Johnson v. State*,
419 S.W.3d 665 (Tex. App.—
Houston [1st Dist.] 2013, pet. ref'd) ............................................... 10, 12, 13, 31

*Johnson v. State*,
871 S.W.2d 183 (Tex. Crim. App. 1993)................................................................8

*Johnson v. State*,
967 S.W.2d 410 (Tex. Crim. App. 1998)................................................................31

*Johnston v. State*,
  230 S.W.3d 450 (Tex. App.—
  Fort Worth 2007, no pet.)........................................................................16

*Jones v. State*,
  119 S.W.3d 412 (Tex. App.—
  Fort Worth 2003, no pet.)................................................................ 24, 25

*Laster v. State*,
  275 S.W.3d 512 (Tex. Crim. App. 2009).....................................................9

*Lee v. State*,
  176 S.W.3d 452 (Tex. App.—
  Houston [1st Dist.] 2004)
  aff'd, 206 S.W.3d 620 (Tex. Crim. App. 2006).......................................12

*Lockhart v. State*,
  847 S.W.2d 568 (Tex. Crim. App. 1992)..................................................19

*Lopez v. State*,
  884 S.W.2d 918 (Tex. App.—
  Austin 1994, pet. ref'd) .......................................................................8, 30

*Losada v. State*,
  721 S.W.2d 305 (Tex. Crim. App. 1986)..................................................16

*Martin v. State*,
  176 S.W.3d 887 (Tex. App.—
  Fort Worth 2005, no pet.)........................................................................32

*Martines v. State*,
  371 S.W.3d 232 (Tex. App.—
  Houston [1st Dist.] 2011, no pet.) ........................................... 20, 27, 30

*Martinez v. State*,
  190 S.W.3d 254 (Tex. App.—
  Houston [1st Dist.] 2006, pet. ref'd) ......................................................27

*Massey v. State*,
  933 S.W.2d 141 (Tex. Crim. App. 1996)..................................................29

*McCoy v. State*,
  10 S.W.3d 50 (Tex. App.—
  Amarillo 1999, no pet.) ..................................................................... 25, 29

*Mechler v. State*,
  153 S.W.3d 435 (Tex. Crim. App. 2005)..................................................21

v

*Montgomery v. State*,
810 S.W.2d 372 (Tex. Crim. App. 1990)................................................ 21, 22, 30

*Monzon v. State*,
991 S.W2d 841 (Tex. Crim. App. 1991).........................................................21

*Morales v. State*,
32 S.W.3d 862 (Tex. Crim. App. 2000).........................................................32

*Motilla v. State*,
78 S.W.3d 352 (Tex. Crim. App. 2002)..................................................... 31, 32

*Paulson v. State*,
28 S.W.3d 570 (Tex. Crim. App. 2000)...........................................................8

*Pool v. State*,
981 S.W.2d 467 (Tex. App.—
Waco 1999, pet. ref'd)..................................................................................23

*Powell v. State*,
194 S.W.3d 503 (Tex. Crim. App. 2006)........................................................17

*Proctor v. State*,
356 S.W.3d 681 (Tex. App.—
Eastland 2011, pet. ref'd) ............................................................................15

*Reed v. State*,
158 S.W.3d 44 (Tex. App.—
Houston [14th Dist.] 2005, pet. ref'd)..............................................................8

*Richert v. State*,
01-10-00901-CR, 2012 WL 3775979 (Tex. App.—
Houston [1st Dist.] Aug. 30, 2012)
cert. denied, 134 S. Ct. 1317 (2014) ..............................................................14

*Rodriguez v. State*,
104 S.W.3d 87 (Tex. Crim. App. 2003)..........................................................27

*Shepherd v. State*,
273 S.W.3d 681 (Tex. Crim. App. 2008).........................................................18

*Sims v. State*,
84 S.W.3d 805 (Tex. App.—
Houston [1st Dist.] 2002, no pet.) ..................................................................18

*Solomon v. State*,
49 S.W.3d 356 (Tex. Crim. App. 2001)..........................................................31

*State v. Maldonado*,
176 S.W.3d 419 (Tex. App.—
Houston [1st Dist.] 2004, no pet.) ............................................................... 18, 19

*Taylor v. State*,
920 S.W.2d 319 (Tex. Crim. App. 1996)...................................................24

*Temple v. State*,
390 S.W.3d 341 (Tex. Crim. App. 2013)....................................................7, 8

*Tinker v. State*,
148 S.W.3d 666 (Tex. App.—
Houston [14th Dist.] 2004, no pet.)...........................................................14

*Valtierra v. State*,
310 S.W.3d 442 (Tex. Crim. App. 2010).....................................................19

*Waddell v. State*,
873 S.W.2d 130 (Tex. App.—
Beaumont 1994, pet. ref'd) .......................................................................25

*Williams v. State*,
235 S.W.3d 742 (Tex. Crim. App. 2007)......................................................15

*Williams v. State*,
301 S.W.3d 675 (Tex. Crim. App. 2009).......................................................18

*Williamson v. State*,
356 S.W.3d 1 (Tex. App.—
Houston [1st Dist.] 2010, pet. ref'd) ..........................................................28

*Worley v. State*,
870 S.W.2d 620 (Tex. App.—
Houston [1st Dist.] 1994, pet. ref'd) ...........................................................27

*Wyatt v. State*,
23 S.W.3d 18 (Tex. Crim. App. 2000)............................................................16

## STATUTES

TEX. CODE CRIM. PROC ANN.
art. 57.01 (4) (West 2010) ............................................................................1

TEX. CODE CRIM. PROC. ANN.
art. 38.07 (West supp. 2014) ........................................................................12

TEX. CODE CRIM. PROC. ANN.
art. 38.37, § 1(b) (West supp. 2014) ............................................................... 20, 32

TEX. CODE CRIM. PROC. ANN.
art. 38.37, § 2(b) (West supp. 2014) ...................................................................20

TEX. CODE CRIM. PROC. ANN.
art. 57.02(h) (West supp. 2014) ............................................................................1

TEX. CODE CRIM. PROC. ANN.
art. 57.03(d) (West 2010) .....................................................................................1

TEX. PENAL CODE § 22.021(a)(1)(B) (West supp. 2014) ..........................................9

TEX. PENAL CODE ANN. § 22.021 (West supp. 2014)..............................................23

## RULES

TEX. R. APP. P. 33.1 .......................................................................................... 26, 27

TEX. R. APP. P. 39........................................................................................................ i

TEX. R. APP. P. 44.2(b)...............................................................................................31

TEX. R. EVID. 103(a) ........................................................................................ 26, 27

TEX. R. EVID. 404(b) ..................................................................................................19

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

The State charged the appellant with one count of aggravated sexual assault of a child under fourteen years of age enhanced by one prior felony conviction, and the jury found the appellant guilty (CR –7-8, 18, 1364, 136-37; 6 RR 4-5). The trial court sentenced him to forty-five years in the Texas Department of Criminal Justice, Institutional Division (CR – 136-37; 7 RR 11-12). The appellant filed a timely notice of appeal, and the trial court certified that he had the right to appeal (CR – 139-40).

## STATEMENT OF FACTS

The appellant began inappropriately touching Jane[1] when she was nine years old (4 RR 63). The appellant is Jane's biological father, and they lived together in an apartment with Jane's mother and Jane's younger sister (4 RR 10, 58). Jane's

---

[1] A person "who has access to or obtains the name, address, telephone number, or other identifying information of a victim younger than 17 years of age may not release or disclose the identifying information to any person who is not assisting in the investigation, prosecution, or defense of the case." TEX. CODE CRIM. PROC. ANN. art. 57.02(h) (West supp. 2014). The term "victim" means a person who was the subject of: "(A) an offense the commission of which leads to a reportable conviction or adjudication under Chapter 62; or (B) an offense that is part of the same criminal episode, as defined by Section 3.01, Penal Code, as an offense described by Paragraph (A)." TEX. CODE CRIM. PROC. ANN. art. 57.01 (4) (West 2010). The release or disclosure of such information to any person is a class C misdemeanor. TEX. CODE CRIM. PROC. ANN. art. 57.03(d) (West 2010). Therefore, the pseudonym "Jane" will be used for the victim in this case.

mother worked during the day, and the appellant stayed home with the girls (4 RR 35, 67).

The first time something happened, Jane woke up, and her clothes were on wrong: her pants were backwards, and her shirt was inside out (4 RR 62). Another time, when Jane came home from school and lay in her bed wearing a t-shirt and shorts, the appellant came into her room (4 RR 63-4). He lay next to Jane and got on top of her (4 RR 64). In 2012, the abuse escalated; the appellant touched Jane's breasts and buttocks with his hand (4 RR 72). He would also touch her "middle part" with his hand and "middle part" (4 RR 72).

In August 2012, while Jane's mother was at work, the appellant came into Jane's room and got on top of her (4 RR 77-8). He slid his hand onto her "middle part" and moved it around for a couple of seconds (4 RR 77-8). Then he moved his hand up to her breasts, under her clothes (4 RR 78). The appellant unzipped and took off his pants and put his "middle part" inside her "middle part" (4 RR 79-81). This hurt Jane (4 RR 81). Jane tried to push and kick the appellant, but he held her down (4 RR 81-2). Jane's sister banged on the door, but the appellant covered Jane's face with a pillow (4 RR 79-80). Jane knew the appellant was finished when she felt something warm on her genitals, and saw something white on her stomach (4 RR 83-4). She took a shower because it felt wrong (4 RR 84). She then went

back to her room and locked the door so the appellant could not come in (4 RR 85). Jane was eleven years old (4 RR 54).

Jane began cutting herself with a razor blade because of all she was "going through" (4 RR 61, 65, 157-58). Jane's mother noticed she had some discipline problems at school in 2011 (4 RR 36-8). *See* (St. Ex. #2 – Jane's school records). During that year, Jane was angry with the appellant and no longer wanted to go to the store with him on Sundays, even though that was something she had always done (4 RR 33). And by summer 2012, Jane's mother noticed that she became angrier and withdrawn (4 RR 38).

The appellant's penis penetrated Jane's vagina four different times (4 RR 164). *See* (St. Ex. #4). Jane was inappropriately touched "overall" by the appellant five times; the last time occurring several days before she finally told her friends at Keller Middle School in September 2012 (4 RR 64-5, 71-2, 165-66). *See* (St. Ex. #4). Jane told three friends at school about her father sexually assaulting her after one of the girls shared that she had been molested (4 RR 65). She told because she was tired of the abuse (4 RR 167). Her friends told the school counselor, but Jane denied the abuse (4 RR 66). Jane was afraid to tell because she still had to go home to where the appellant would be (4 RR 66). Instead, Jane told a made-up story about a man grabbing her at the bus stop (4 RR 66).

On September 6, 2012, Brittany Brown, a sexual abuse investigator with CPS, went to speak with Jane at school (3 RR 16; 4 RR 66). Jane also told Brown the made-up story about the man grabbing her at the bus stop (3 RR 18; 4 RR 67). Jane repeated this story because she wanted it all to go away (4 RR 67). But Brown continued her investigation because Jane's explanations did not make sense (3 RR 19). She recognized that sometimes kids are hesitant to talk with her because they think CPS will remove them from their families (3 RR 29-30).

On September 12, 2012, Detective Tim Brinson with the Pasadena Police Department Juvenile Sex Crimes division met with Jane (3 RR 49, 54). Jane was very upset and emotional; she cried during their conversation (3 RR 55). At first Jane denied any abuse from her father and told Brinson the made-up story (4 RR 67). But later when confronted with the previous outcry to her friends, Jane told him what happened (4 RR 67). Jane told Brinson that the appellant touched her breasts and buttocks (4 RR 67). And she told him what the appellant was going to do to her at home (4 RR 67).

Brinson took Jane to the Children's Assessment Center (CAC) where she was forensically interview by Susan Odhiambo (3 RR 56-7; 4 RR 68-9, 71, 114). During the interview, Jane made very little eye contact, looked down, and was emotional as she described the details of the abuse by the appellant (4 RR 126). Jane told Odhiambo the details of what was going on at home with the appellant (4

4

RR 71, 126, 129-31). Finally, Jane told Odhiambo all the details of the appellant's abuse (4 RR 89). Jane told her because it was "finally time" and she "felt safe" since the appellant would not be able to go home with her (4 RR 89).

On September 13, 2012, Dr. Reena Isaac, a child abuse pediatrician, conducted a comprehensive forensic medical evaluation of Jane at the CAC (4 RR 141-42, 153). *See* (St. Ex. #4 – CAC Medical Records). Isaac took a complete medical history from both Jane and her mother (4 RR 153-59). Isaac learned that Jane recently had a bad temper and had gone through a period of self-mutilation (4 RR 157-58). Jane told Isaac she was sexually touched on her vagina and breasts by the appellant over the past year (4 RR 162-68). Jane told Isaac that the appellant's penis penetrated her vagina more than one time (4 RR 163-64). Jane was tearful discussing the abuse with Isaac (4 RR 156). Although there were no signs of trauma during Jane's exam, Isaac was not surprised because the female sexual organ is meant to take trauma, and it heals quickly (4 RR 171-73).

After Jane told her friends at school about the appellant sexually assaulting her, "one of the girls told a lot of people" and other students were talking about the abuse (4 RR 87-8). Other students began "making fun of her, writing ugly things on her folder, [and] bullying her." (4 RR 49). Because of this, Jane's mother took her out of Keller Middle and homeschooled her until she began at another school

in January 2013 (4 RR 28, 87-8). Jane later moved and did well at a different school (4 RR 30-31, 89).

Jane's mother and the appellant did not have any marital issues prior to the allegations (4 RR 11). She did not want to believe the allegations because she loved her husband, but she was supportive of Jane (4 RR 48). And although she was surprised by the allegations, Jane's mother realized that she missed some signs that something was wrong: Jane's anger towards the appellant, finding the appellant in Jane's room at night with the door locked, Jane not wanting to go to the store with the appellant, and Jane complaining that her vagina hurt and seeing a tear (4 RR 33-6).

## SUMMARY OF THE ARGUMENT

The evidence admitted in this case was legally sufficient to enable a rational factfinder to find each element of the offense of aggravated sexual assault of a child, including Jane's account of the sexual assault by the appellant, giving due deference to the jury's role as the factfinder and judge of the credibility of the evidence, and reviewing the record in the light most favorable to the guilty verdict.

The trial court did not abuse its discretion in admitting the extraneous acts of touching and fondling during Jane's testimony or the medical records under Rule 403 because the probative value outweighed any unfair prejudice. Furthermore, the appellant failed to preserve any complaint regarding Isaac's testimony or the

6

number of times Jane was sexually assaulted by the appellant as mentioned in the medical records.

## REPLY TO APPELLANT'S FIRST POINT OF ERROR

In the appellant's first point of error, he argues that the evidence presented in his case was legally insufficient to convince any rational factfinder beyond a reasonable doubt that he committed the offense of aggravated sexual assault of a child.

### I.     Standard of Review and Applicable Law

Every criminal conviction must be supported by legally sufficient evidence that each element of the offense is proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315 (1979); *Adames v. State*, 353 S.W.3d 854, 853 (Tex. Crim. App. 2011). In order to determine whether this standard has been met, an appellate court reviews all the evidence in the light most favorable to the verdict and decides whether, based on that evidence and reasonable inferences, a rational factfinder could have found each essential element of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319 (finding that "the relevant question is whether, after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (emphasis in original); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *Reed v. State*, 158 S.W.3d 44, 46 (Tex. App.—Houston

[14th Dist.] 2005, pet. ref'd). This applies equally to the analysis of direct or circumstantial evidence in the record. *Reed*, 158 S.W.3d at 47.

Circumstantial evidence alone can be sufficient to establish guilt, and is analyzed the same as direct evidence in the record. *Temple*, 390 S.W.3d at 359 ("A criminal conviction may be based upon circumstantial evidence."); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (noting "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and that "circumstantial evidence alone can be sufficient to establish guilt."); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (same). Not every fact has to point to the defendant's guilt, rather "it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances." *Temple*, 390 S.W.3d at 359 (quoting *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)); *see Clayton*, 235 S.W.3d at 778. When conflicts appear in the record a reviewing court must presume the trier of fact resolved the conflict in favor of the verdict and should defer to that resolution. *Id.* at 360.

The jury's role is to "weigh the evidence, to judge the credibility of the witnesses, and to choose between the conflicting theories of the case." *Lopez v. State*, 884 S.W.2d 918, 921 (Tex. App.—Austin 1994, pet. ref'd) (citing *Geesa v. State*, 820 S.W.2d 154, 159 (Tex. Crim. App.1991) (overruled in part on other grounds by *Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000))); *see also*

*Gonzalez v. State*, 337 S.W.3d 473, 480 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (finding a rational juror could believe the appellant sexually assaulted the complainant in resolving conflicting testimony between what the complainant testified to and what she told the sexual-assault-examination nurse)

This Court's role is not to simply compare an appellant's analysis of the evidence against the State's analysis of the same evidence. *Cardenas v. State*, 30 S.W.3d 384, 389 (Tex. Crim. App. 2000). Rather, this Court must uphold the verdict unless a factfinder does not act rationally. *Laster v. State*, 275 S.W.3d 512, 517-518 (Tex. Crim. App. 2009) (stating this Court's role is to guard against this "rare occurrence" where a jury acts irrationally).

## II. The evidence is legally sufficient to support the appellant's conviction for aggravated sexual assault of a child.

The jury concluded beyond a reasonable doubt that on or about August 15, 2012, the appellant intentionally or knowingly caused the sexual organ of Jane, a person younger than fourteen years of age, to contact his sexual organ (CR – 18, 134, 136). TEX. PENAL CODE § 22.021(a)(1)(B) (West supp. 2014). The record contains abundant evidence from which the jury could rationally find each element of aggravated sexual assault of a child beyond a reasonable doubt.

The appellant was left alone with Jane during the months surrounding the charging date of the assault (4 RR 34-5, 85). The appellant is Jane's biological father and lived in the same apartment as Jane in August 2012 (4 RR 9-10, 58).

9

Jane and her mother testified that because her mother worked during the day the appellant stayed home with the kids (4 RR 34-5, 85). Jane testified her mother left for work at 7:00 a.m. and came home around 6:00 p.m. (4 RR 98). Thus, the appellant had access to Jane. *See Johnson v. State*, 419 S.W.3d 665, 671 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (finding victim's testimony of sexual assault was corroborated by the testimony of every witness including the appellant showed he had access to the complainant).

Jane testified that the appellant sexually assaulted her multiple times (4 RR 62-4, 72-85). Jane told the jury that the appellant touched "all the parts of her body" – her breast, buttocks and "middle part" (4 RR 67-8, 72). She testified that the appellant touched her "middle part" with his hand and his "middle part" (4 RR 73-4). Jane explained that both her "middle part" and his "middle part" are used for peeing (4 RR 72, 74). Using anatomically correct dolls, Jane pointed to the genitals of both the female and male doll when referring to their middle parts (4 RR 74, 78). She testified the first time it happened she woke up and her pants were on backwards, and shirt on inside out (4 RR 62). She testified the last time the appellant sexually abused her was the day before she told her friends at school in September 2012 (4 RR 71-2).

She described a time that the appellant assaulted her in August 2012 in detail (4 RR 72, 74-85). She testified while her mom was at work she was in her room

laying down watching television on her bed, and the appellant came into her room and lay next to her (4 RR 74-6, 85). She testified that the appellant got on top of her, slid his hand down her pants onto her "middle part" and moved it around (4 RR 77-9). She testified that the appellant then moved his hand to her breasts (4 RR 78). She explained that he touched her breasts underneath her clothes (4 RR 78). Jane testified that her sister began to bang on the door and described that the appellant put a pillow over her face (4 RR 81). She told the jury that the appellant held her down, unzipped and removed his pants, and forced his middle part inside of her middle part (4 RR 80-81). Jane testified that this hurt (4 RR 81). She stated that she tried to push and kick the appellant, but that he did not stop (4 RR 81-2). She testified that the appellant stopped when "he finished" and described that she felt something warm at her vagina (4 RR 82-4). Jane explained "it" was also on her stomach, and "it" was white, but did not state she saw where "it" came from (4 RR 83-4). Jane testified that afterwards she took a shower to clean everything off because it felt wrong (4 RR 85).

Jane testified she did not tell her mom because the appellant was there, and she was scared (4 RR 85, 100). Jane explained that she did not think her mother would believe her (4 RR 100). She finally told her friends at school after another girl shared that she was molested (4 RR 91-2). Although she later denied the abuse to several adults, Jane explained she told Odhiambo because she felt safe the

11

appellant would not go home with her (4 RR 89-90). In Jane's forensic interview at the CAC and her medical examination by a child abuse pediatrician, she was able to provide these same details of abuse (4 RR 128-31; 162-64). *See* (St. Ex. #4). Jane's testimony that the appellant placed his "middle part" inside of her "middle part"[2] met each element aggravated sexual assault of a child; thus, was sufficient to support the jury's verdict. *See Johnson*, 419 S.W.3d at 671-72 (holding the victim's testimony that the appellant inserted his finger into her vagina itself satisfied the elements of aggravated sexual assault of a child and was sufficient to support a conviction).

The appellant argues Jane's testimony is not sufficient to sustain a conviction because there were not enough specific details. (App'nt Brf. 16-17). But Jane's testimony met each element of aggravated sexual assault of a child. And the testimony of a single witness may be legally sufficient to support a conviction of a criminal offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West supp. 2014) (stating that a conviction under Chapter 21, among other enumerated provisions, of the Texas Penal Code may be supported by the uncorroborated testimony of the victim of the sexual offense); *Lee v. State*, 176 S.W.3d 452, 455 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006) (holding

---

[2] Jane used the term "middle part" to refer to their genitals; Isaac testified that Jane told her the appellant put his penis inside her vagina and that the vagina and penis are sexual organs (4 RR 74, 78, 159-60).

12

"[t]he testimony of a child victim alone is sufficient to support a conviction for indecency with a child."); *see also In re R.R.*, 373 S.W.3d 730, 734-35 (Tex. App.—Houston [14th Dist.] 2012, pet. filed) (holding "a rational factfinder could have found that [the appellant] intentionally or knowingly caused the penetration of a child's sexual organ" based only on the victim's testimony that the appellant "stuck his penis in my vagina").

Additionally, the determination of what weight to give that testimony is within the sole province of the jury when it turns on credibility and demeanor. *Clayton*, 235 S.W.3d at 778. The evidence on appeal must be viewed in the light most favorable to the jury's verdict. *Id.* Viewing Jane's testimony in the light most favorable to the jury's decision, it is sufficient to support a rational finding that she was assaulted by the appellant. *Id.*; *Johnson*, 419 S.W.3d at 671.

Moreover, other witnesses corroborated Jane's testimony. Jane's mother testified that during this time, Jane's feelings towards the appellant changed, and she observed Jane was withdrawn, depressed, and angry (4 RR 31-2, 34-5, 38). Jane began to cut herself (4 RR 32). She testified that one time she woke up in the middle of the night to find the appellant in the girls' room with the door locked (4 RR 33-4). Additionally, she recalled a time during the summer of 2012 that Jane complained of pain in her private area, and she observed a tear (4 RR 36).

Furthermore, both Odhiambo and Isaac's testimony reflected that Jane told them similar details of abuse and that she was emotional when she described what happened to her (4 RR 126, 156). Laird testified that Jane showed signs and symptoms of sexual abuse (4 RR 191). Although corroboration is not required and no other witness testified to the specific acts of abuse, the evidence corroborated Jane's testimony surrounding the acts. *See Richert v. State*, 01-10-00901-CR, 2012 WL 3775979 at *5 (Tex. App.—Houston [1st Dist.] Aug. 30, 2012) *cert. denied*, 134 S. Ct. 1317 (2014) (mem. op., not designated for publication) (recognizing the jury could have reasonably found the appellant committed two or more acts of aggravated sexual assault of a child from the complainant's testimony regarding the abuse, her mother's testimony regarding visits to the appellant and the outcry witness's testimony of the complainant's account of the sexual abuse).

The appellant argues that there is no physical evidence of abuse. But physical evidence is not required. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978) (holding that victim's testimony was sufficient to prove sexual contact occurred despite a lack of physical evidence); *Tinker v. State*, 148 S.W.3d 666, 669 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (noting despite the lack of DNA evidence, the complainant's testimony alone was sufficient to support the jury's verdict that sexual contact did occur).

The appellant argues that Jane's testimony should be discounted because it is not credible. (App'nt Brf. 16-17). But, attacks on the complainant's credibility have "no bearing on [a reviewing court's] sufficiency analysis." *In re R.R.*, 373 S.W.3d at 735 (citing *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)); *see also Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (holding the jury, as factfinder, was free to disbelieve the complainant's recantation; it "is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented by the parties."). Jane testified she understood the difference between a truth and a lie and promised to tell the truth (4 RR 56-7).

The appellant specifically points to evidence that Jane provided conflicting statements to multiple witnesses. (App'nt Brf. 16-17). But the jury was free to believe or disbelieve all or any part of Jane's testimony and conclude that any inconsistencies were inconsequential. *Proctor v. State*, 356 S.W.3d 681, 684 (Tex. App.—Eastland 2011, pet. ref'd) (holding sufficient evidence to prove the appellant was guilty of aggravated sexual assault of a child in spite on inconsistencies in the victim's testimony). Although Jane did not immediately outcry and denied the abuse to her mother, to the school counselor, to CPS, and to Detective Brinson, she did tell everything to Odhiambo and Isaac (4 RR 89, 128-31, 162-64). *See Johnston v. State*, 230 S.W.3d 450, 455-56 (Tex. App.—Fort

15

Worth 2007, no pet.) (recognizing that delayed outcry is common in abused children and something the jury could have resolved in finding the appellant guilty of sexual assault of a child).

Additionally, the appellant contends that Jane's testimony is inconsistent because she told Odhiambo that she felt something warm on her genitals and stomach, but that she told Isaac nothing came out of the appellant's middle part (4 RR 84-5, 131, 164). (App'nt Brf. 18). But the appellant assumes Jane, an eleven-year-old girl, knew where the "white stuff" came from. Jane never discussed that with Odhiambo, and Isaac's question specifically asked her if anything came out of his middle part (4 RR 164). *See* (St. Ex. #4). Regardless, as previously stated, this would merely be a conflict for the factfinder to resolve and the jury was free to believe this testimony or not. *See Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000) (noting "reconciliation of conflicts in the evidence is within the exclusive province of the jury." (quoting *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986)).

Moreover, the appellant's contentions that Jane copied her friends are neither appropriate for a sufficiency review nor are they supported by the record. *See* (App'nt Brf. 16-17). First, there is nothing in the record that supports Jane's recount of abuse "mirrored" her friend's molestation (4 RR 65, 91-2). *See* (App'nt Brf. 16). The record does not contain how her friend was molested or that she was

16

molested the same way. Second, the appellant's argument that Jane cut herself to be like her friends is not supported by the record. (App'nt 16-17). Neither Jane nor her mother testified that her cutting was because her friends were doing it (4 RR 32, 61). The only mention of friends also cutting was in Dr. Isaac's medical notes. *See* (St. Ex. #4). In fact, Jane testified she cut herself because she was "going through a lot at the time" (4 RR 61). And Laird testified that cutting can be an expression of feelings (4 RR 192).

Reviewing the record in the light most favorable to the jury's verdict, and allowing for the credibility determinations and logical inferences that the jury was permitted to make from the evidence, there is sufficient evidence for a rational trier of fact to have concluded beyond a reasonable doubt that the appellant was guilty of each element of aggravated sexual assault of a child. *See Clayton*, 235 S.W.3d at 778-79 (noting that when a record supports conflicting inferences, a reviewing court presumes that the factfinder resolved the conflict in favor of their verdict); *Powell v.State*, 194 S.W.3d 503, 508 (Tex. Crim. App. 2006); *Jackson*, 443 U.S. at 319. Thus, the appellant's first point of error should be overruled.

## **REPLY TO APPELLANT'S SECOND AND THIRD POINTS OF ERROR**

In the appellant's second point of error, he argues that the trial court erred by allowing evidence of extraneous conduct between the appellant and Jane of touching and fondling during Jane's testimony. (App'nt Brf. 18). In the appellant's

17

third point of error, he argues that the trial court erred by allowing extraneous evidence of touching and intercourse through the testimony and medical records of Isaac. (App'nt Brf. 23-4). Because both points of error challenge the admissibility of extraneous acts of abuse by the appellant they will be addressed together.

## I.    Standard of Review

A trial court's ruling on the admissibility of an extraneous offense is reviewed under an abuse of discretion standard. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008); *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). A trial judge whose ruling is within the "zone of reasonable disagreement" should not be reversed. *Green v. State*, 934 S.W.2d 92, 101-102 (Tex. Crim. App. 1996). The reviewing court must view the evidence in the light most favorable to the trial court's ruling, giving the trial court almost total deference on its findings of historical fact that find support in the record. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Where the trial court does not make express findings of fact, a reviewing court will assume that the trial court made "implicit findings that support its ruling, provided those implied findings are supported by the record." *State v. Maldonado*, 176 S.W.3d 419, 421 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Sims v. State*, 84 S.W.3d 805, 807-08 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Ross*, 32 S.W.3d at 856. A reviewing court must affirm the trial

18

court's ruling if it is correct on any theory of law applicable to the case and is reasonably supported by the record. *Maldonado*, 176 S.W.3d at 421; *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).

**II.    The trial court did not abuse its discretion in admitting the appellant's extraneous sexual abuse of Jane into evidence**

Evidence of an extraneous offense is not generally admissible to prove the character of a defendant in order to show that the defendant acted in conformity with that character. *See Lockhart v. State*, 847 S.W.2d 568, 570 (Tex. Crim. App. 1992); TEX. R. EVID. 404(b). But extraneous offenses may be admitted for other purposes, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id*. Additionally, evidence of extraneous offenses that are "indivisibly connected to the charged offense and necessary to the State's case in proving the charged offense" may be admissible for contextual purposes. *Id.* at 571; *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex. Crim. App. 1972) (recognizing background evidence was admitted "[t]o show the context in which the criminal act occurred … under the reasoning that events do not occur in a vacuum and that the jury has a right to hear what occurred immediately prior to and subsequent to the commission of the act so that they may realistically evaluate the evidence.").

Specific to child abuse cases, Article 38.37 of the Texas Code of Criminal procedure allows for extraneous offenses "committed by the [appellant] against the

19

child who is the victim of the alleged offense *shall* be admitted for its bearing on relevant matters, including: (1) the state of mind of the [appellant] and the child; and (2) the previous and subsequent relationship between the [appellant] and the child." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 1(b) (West supp. 2014)[3] (emphasis added); *Hinds v. State*, 970 S.W.2d 33, 35 (Tex. App.—Dallas 1998, no pet.) ("By enacting article 38.37, the legislature in effect determined that, in certain sexual abuse cases, evidence of "other crimes, wrongs, or acts" committed by the accused against the child victim are relevant and admissible under rule 402.").

Although otherwise irrelevant evidence may become relevant under Article 38.37, that evidence may still be excluded under Rule 403 if its probative value is substantially outweighed by its danger of unfair prejudice. *See* TEX. R. EVID. 403; *Martines v. State*, 371 S.W.3d 232, 248 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Unfair prejudice "refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006).

A Rule 403 balancing test or analysis includes, but is not limited to, consideration of four relevant factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time

---

[3] Amended September 1, 2013 to add that a *separate*, enumerated offense of child abuse may be admitted in the trial for *any* bearing the evidence has on relevant matters, including the character of the defendant and acts performed *in conformity with* the character of the defendant. TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b) (West supp. 2014) (emphasis added).

needed to develop the evidence; and (4) the proponent's need for the evidence. *Mechler v. State*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005); *Monzon v. State*, 991 S.W2d 841, 847 (Tex. Crim. App. 1991). A trial court has broad discretion to determine whether evidence is admissible. *Montgomery v. State*, 810 S.W.2d 372, 386, 390 (Tex. Crim. App. 1990). "Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." *Id*. at 389.

### A. *Jane's testimony that the appellant touched and fondled her on other occasions was more probative than unfairly prejudicial.*

The appellant argues that the trial court abused its discretion in allowing Jane to testify to extraneous acts of touching and fondling by the appellant because the probative value of that testimony was substantially outweighed by its unfair prejudice. (App'nt Brf. 18-21). Specifically, he complains about Jane's testimony regarding three[4] separate extraneous events: (1) the first time she was abused where she woke up with her pants on backwards and shirt inside out (4 RR 62); (2) a time that she came home from school, changed into a t-shirt and basketball shorts and the appellant came into her room and lay with her (4 RR 63-4); and (3) when the appellant touched her breast and buttocks (4 RR 67). (App'nt Brf 21-2). But the

---

[4] Although at trial the appellant objected to Jane's testimony regarding all noticed extraneous offenses, on appeal he does not complain about Jane's testimony regarding the appellant's hand touching or penetrating her genitals (4 RR 51, 72-3, 77-8). (App'nt Brf. 18-23).

probative values of each of these extraneous acts were not substantially outweighed by their unfairly prejudicial effect.

The first two complained-of extraneous acts demonstrated the relationship between Jane and the appellant before he began sexually assaulting her, and they were not so inflammatory to impress the jury in some irrational manner. *See Montgomery*, 810 S.W.2d at 395 (noting that "other crimes, wrongs, or acts" are impermissible when they create "unfair prejudice" and invites the jury to "convict on a moral or emotional basis rather than as a reasoned response to the relevant evidence."). In fact, her testimony about finding her clothes were on wrong did not include her father touching her and she did not know how her clothes became that way (4 RR 62). Moreover, her detailed description of the August 2012 offense likely overshadowed any inflammatory response the jury may have had to these acts. *See id.*; *Burke v. State*, 371 S.W.3d 252, 256 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (finding the complainant's testimony of extraneous offenses was likely overshadowed by his description of the underlying offense – the appellant putting his hands around his throat, causing pain); *see also Greene v. State*, 287 S.W.3d 277, 285 (Tex. App.—Eastland 2009, pet. ref'd) ("To constitute an extraneous offense, the evidence must show a crime or bad act and must connect the defendant to it.") (citing *Lockhart v. State*, 847 S.W.2d 568, 573 (Tex. Crim. App. 1992)).

Additionally, there was not an excessive amount of time spent developing the first two acts. It was only a couple of questions and three pages of the record, whereas a majority of her testimony was spent on the charged offense (4 RR 62-4, 72-85). *Cf. Beam v. State*, 447 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (noting that the State spent significant time developing the extraneous act calling multiple witnesses and presenting medical records). Furthermore, the State had no other evidence that it could similarly illustrate the relationship between Jane and the appellant, the progression of abuse, and the appellant's state of mind. *See* TEX. PENAL CODE ANN. § 22.021 (West supp. 2014). (requiring proof that aggravated sexual assault was done "intentionally or knowingly"); *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) ("Intent may also be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant.").

Jane's testimony regarding the appellant touching and fondling her breasts and buttocks not only provided context for the jury to understand how the sexual abuse started, it showed how the offense related directly to their previous relationship and states of mind (4 RR 67). *See Burke*, 371 S.W.3d at 256 (holding that evidence of the appellant's previous molestations of the complainant was probative of their relationship); *Pool v. State*, 981 S.W.2d 467, 469 (Tex. App.—Waco 1999, pet. ref'd) (holding that sexual assaults and subsequent pregnancy by

23

the appellant against the complainant after her seventeenth birthday were admissible under Article 38.37); *Hinojosa v. State*, 995 S.W.2d 955, 957 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (evidence of extraneous acts committed by the appellant against the child, including numerous incidents of sexual, verbal, and physical abuse of the child victim, showed their previous and subsequent relationship as well as their states of mind).

Although the touching of Jane's breast and buttocks undoubtedly carries some emotional weight, it was less heinous than the charged offense of rape; therefore, it was not likely to create such prejudice in the minds of the jurors that they would have been unable to limit their consideration of the evidence to its proper purpose. *See Jones v. State*, 119 S.W.3d 412, 422 (Tex. App.—Fort Worth 2003, no pet.) (holding evidence of an extraneous victim was less heinous than the charged acts and therefore were not likely to create such prejudice in the minds of the jury) (citing *Taylor v. State*, 920 S.W.2d 319, 323 (Tex. Crim. App. 1996)).

Additionally, the jury charge contained a limiting instruction that minimized any prejudicial effect of the extraneous evidence (CR – 130). *See Beam*, 447 S.W.3d 401 at 405 (noting that any impermissible inference from extraneous conduct can be minimized through a limiting instruction); *Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996) (same). Moreover, similar to the first two extraneous acts, a review of the record shows that the State did not spend an

excessive amount of time[5] developing this extraneous offense (4 RR 67-8). *McCoy v. State*, 10 S.W.3d 50, 54 (Tex. App.—Amarillo 1999, no pet.).

Finally, contrary to the appellant's contention that he did not present a defensive theory, his cross-examinations and closing argument introduced the theory that Jane fabricated the whole incident (3 RR 28-30, 68; 4 RR 41, 43, 47, 92-4, 96-7, 99-101, 179, 195, 198; 5 RR 10-16). (App'nt Brf. 22); *see Blackwell v. State*, 193 S.W.3d 1, 11-12 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (holding extraneous offenses were admissible to rebut the appellant's defensive theory created in cross-examination and argument). Therefore, the State needed this evidence to rebut that theory. *See Jones*, 119 S.W.3d at 423 (holding that extraneous sexual assaults of the child victim were a logical and necessary rebuttal of major defense theory of fabrication); *Waddell v. State*, 873 S.W.2d 130, 136 (Tex. App.—Beaumont 1994, pet. ref'd) (same). Thus, the danger of unfair prejudice did not substantially outweigh the probative value of the extraneous act. *McCoy*, 10 S.W.3d at 54 (overruling the appellant's Rule 403 challenge that "the only reason the State wanted the extraneous offense in this case was to show that [the appellant] was a child molester."). The appellant's second point of error should be overruled.

---

[5] The State was careful not to discuss the extraneous fondling with other witnesses besides Jane and Dr. Isaac. *See* (3 RR 46, 68) (notifying the trial court that the appellant had opened the door to discuss the extraneous offenses during cross-examination of Brinson and allowing the appellant to withdraw the question); (4 RR 112-13) (informing the trial court that the State would not be eliciting testimony from Odhiambo regarding the extraneous offenses).

**B.** ***The extraneous evidence that the appellant repeatedly touched Jane, as presented through the testimony of Isaac and the medical records, Isaac was more probative than unfairly prejudicial.***

The appellant argues that the trial court abused its discretion in admitting evidence of extraneous acts of touching and intercourse through Isaac's testimony and the medical records under Rule 403. (App'nt Brf. 23-4). During a bench conference outside the presence of the jury, the appellant objected to portions of State's Exhibit #4 (4 RR 138-39). He objected specifically to a question on page five of the record, "How many times were you touched overall by him inappropriately?", and to Jane's answer, "Like, five times." (4 RR 138-39). He also objected specifically to the questions and answers regarding the timing of the first and last act of abuse (4 RR 139). The appellant argued that both questions were more prejudicial than probative, which the trial court overruled (4 RR 139).

But the appellant failed to object to Isaac's testimony[6] itself (4 RR 138-39). Therefore, to the extent Isaac's testimony addressed the extraneous offenses, the appellant has waived his right to complain. *See* TEX. R. APP. P. 33.1; TEX. R. EVID. 103(a). The appellant argues that Isaac's testimony was prejudicial because it "quantified the number of times that misconduct occurred." (App'nt Brf. 25). Specifically, that it "increased the number of times there was penetration from one

---

[6] The State recognizes, however, that most of Dr. Isaac's testimony regarding Jane's exam appears to be read from the medical record (4 RR 151-74).

to four." (App'nt Brf. 25). But again the appellant failed to object to that specific question in State's Exhibit #4, and thus error is waived (4 RR 138-39). *See* TEX. R. APP. P. 33.1; *Martines*, 371 S.W.3d at 248. Additionally, the appellant never objected to any discussion regarding extraneous acts of "intercourse" (4 RR 138-39). Therefore, only his objections to specific questions in the medical records were preserved. *See* TEX. R. APP. P. 33.1; TEX. R. EVID. 103(a).

Regardless, quantifying the amount of times the appellant sexually touched Jane was not extraneous offense evidence, but simply evidence of multiple occurrences of the indicted offense. *See Worley v. State*, 870 S.W.2d 620, 622 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (finding, in aggravated sexual assault of a child case, that the victim's testimony the appellant molested him "at least over a hundred times" did not constitute evidence of extraneous offenses); *Martinez v. State*, 190 S.W.3d 254, 262 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (holding that testimony from the victim's medical examination revealed the appellant had touched her in the vaginal and anal areas "many times" was not evidence of extraneous offenses) (citing *Rodriguez v. State*, 104 S.W.3d 87, 90 (Tex. Crim. App. 2003)).

Nevertheless, the evidence on how many times Jane was "touched overall" in State's Exhibit #4 was more probative than unfairly prejudicial. The evidence provided context to Isaac's diagnosis based on the totality of the physical or

27

psychological trauma Jane suffered (4 RR 167). And, as previously stated, the amount of times Jane was touched by the appellant demonstrated his treatment of her, his mental state, their relationship, the progression of abuse and provided context for the jury. *See Austin v. State*, 222 S.W.3d 801, 808-9 (Tex. App.— Houston [14th Dist.] 2007, pet. ref'd) (noting under Rule 403 that medical records including evidence that siblings were also victims of Munchausen Syndrome by Proxy was critical to showing motive and to providing context to crime); *Burke*, 371 S.W.3d at 257-58 (holding the extraneous sexual assaults of the complainant by the appellant was probative of their relationship and increased the probability he would have felt confident to assault the complainant again).

Additionally, the details of these additional times of abuse were neither provided in the records nor discussed by Isaac. *See* (St. Ex. #4). Although knowing that the abuse happened more than one time could have evoked emotion from the jurors, it was not so much to irrationally influence them. *Cf. Austin*, 222 S.W.3d at 809 (finding that voluminous medical records of extraneous times the appellant repeatedly induced and falsified illnesses in her children could have affected the jury in an emotional way). And, as previously stated, the trial court provided a limiting instruction (CR –130). *See Williamson v. State*, 356 S.W.3d 1, 24 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (finding no unfair prejudice in medical records containing extraneous acts when it was clear from the State's presentation

28

of the evidence that it was offered to explain the motivating forces and to provide context for the offense, the State did not go through the records, and the court provided a limiting instruction).

Moreover, the State spent relatively little time developing the evidence and did not mention it in closing argument (4 RR 165-66). Finally, the State needed the evidence to show the appellant's intent, their relationship, and Jane's mental state. It also helped corroborate Jane's testimony and rebut the defensive theory that she lied. *See Beam*, 447 S.W.3d at 405 (holding the extraneous evidence of medical records and testimony of an additional sexual assault by the appellant was necessary because both sides contested the commission of the charged offense). Thus, the trial court did not abuse its discretion in admitting the evidence, and the appellant's third point of error should be overruled.

Furthermore, any complaint concerning the admission of the extraneous acts of touching and intercourse were waived by the appellant's failure to object to the same or similar evidence admitted at another point in the trial. *See Massey v. State*, 933 S.W.2d 141, 149 (Tex. Crim. App. 1996); *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991); *McCoy v. State*, 10 S.W.3d 50, 54 (Tex. App.—Amarillo 1999, no pet.). Here, the appellant failed to object to the "referral report" portion of the medical records, which states that the appellant penetrated her vagina with his penis at least three times (4 RR 159). *See* (St. Ex. #4). And the appellant failed to

29

object to the note that Jane told Isaac he touched her "middle part" with his hand on page five of the medical records (4 RR 139, 163-64). *See* (St. Ex. #4). Thus, the appellant waived any complaint by the failure to objection to similar testimony. Accordingly, the appellant's third point of error should be dismissed.

Finally, although it is unclear if the appellant complains on appeal about the admissibility of the indication of fondling as the alleged sexual conduct on page six of the medical records, any complaint under Rule 403 was not preserved. (App'nt Brf. 23-4). The appellant's only objection to the evidence at trial was that "it is going into an extraneous [offense] and not the case-in-chief that's before the Court today." (4 RR 139). And a specific Rule 403 objection must be raised to preserve error; it is not implicitly contained in either relevancy or 404(b) objections. *Montgomery*, 810 S.W.2d at 388-89; *see also Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (holding to preserve error for appellate review, a complaint on appeal must comport with the objection at trial, and an objection stating one legal theory may not be used to support a different legal theory on appeal); *Martines*, 371 S.W.3d at 248 (holding an appellate issue based on alleged violation of Rule 403 must be preceded by specific objection). Therefore, the appellant has waived his right to complain about the indication of fondling under Rule 403.

## III. The appellant was not harmed by the trial court's admission of the extraneous conduct.

Under Rule 44.2(b) of the Texas Rules of Appellate Procedure, any non-constitutional "error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). Courts have determined that substantial rights are not affected by the erroneous admission of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

Here, there was substantial evidence to support the appellant's guilt. *See Motilla*, 78 S.W.3d at 358 (finding the weight of the evidence of the defendant's guilt is a factor to be considered in a harm analysis). Jane testified in detail about the appellant penetrating her vagina with his penis, and although not necessary to support a conviction, the other witnesses' testimony corroborated her testimony (4 RR 54-90). *Johnson*, 419 S.W.3d at 671-72 (holding the victim's testimony that the appellant inserted his finger into her vagina itself satisfied the elements of aggravated sexual assault of a child and was sufficient to support a conviction). The evidence of the actual rape was abundant.

Additionally, the extraneous acts showed the relationship between Jane and the appellant, how he first tested the waters with fondling, and how it escalated to sex (5 RR 21). *See Motilla*, 78 S.W.3d at 359 (citing *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)) (finding that another factor in the harm analysis is "the character of the alleged error and how it might be considered in connection with other evidence in the case."); TEX. CODE CRIM. PROC. ANN. art. 38.37, § 1(b) (West supp. 2014). It also rebutted the defensive arguments that she lied and that she only said she was molested to be like her friend (5 RR 11-14, 16).

Moreover, the State did not emphasize the extraneous conduct. *See Martin v. State*, 176 S.W.3d 887, 898, 903 (Tex. App.—Fort Worth 2005, no pet.) (noting that the State did not even mention the objected-to testimony in its closing and therefore holding the trial court's error in admitting the testimony in question was harmless) (citing *Motilla*, 78 S.W.3d at 358). Finally, the trial court provided a limiting instruction regarding testimony of extraneous offenses in the jury charge, which required proof beyond a reasonable doubt and limited consideration only for purposes of determining state of mind and relationship; it is presumed the jury followed those instructions absent evidence to the contrary (CR—130). *See id.* Therefore, it is unlikely that the extraneous fondling or lying next to her in bed had more than a slight effect on the jury's verdict. Thus, the appellant's second and third points of error should be overruled.

## CONCLUSION

It is respectfully submitted that all things are regular and the conviction should be affirmed.

**DEVON ANDERSON**
District Attorney
Harris County, Texas


/s/ _Katie Davis_

**KATIE M. DAVIS**
Assistant District Attorney
Harris County, Texas
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Davis_Katie@dao.hctx.net
State Bar Number: 24070242

## CERTIFICATE OF SERVICE AND COMPLIANCE

This is to certify that: (a) the word count function of the computer program used to prepare this document reports that there are 8,200 words in it; and (b) a copy of the foregoing instrument will be served by efile.txcourts.gov to:

Kurt B. Wentz
5629 Cypress Creek Parkway
Suite 115
Houston, TX 77069
281-587-0088
kbsawentz@yahoo.com


/s/ *Katie Davis*

**KATIE M. DAVIS**
Assistant District Attorney
Harris County, Texas
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Davis_Katie@dao.hctx.net
State Bar Number: 24070242


Date: February 18, 2015